```
         IN THE UNITED STATES DISTRICT COURT
       FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

TAMMY BROWN,                    )
                               )
              Plaintiff,        )
                               )
         v.                    )        1:20-CV-0086
                               )
UNIVERSITY OF NORTH CAROLINA   )
HEALTH CARE SYSTEM,            )
                               )
              Defendant.        )
```

## MEMORANDUM OPINION AND ORDER

THOMAS D. SCHROEDER, Chief District Judge.

In this employment discrimination case, Defendant University of North Carolina Health Care System ("UNC Health") moves to dismiss Plaintiff Tammy Brown's amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6). (Doc. 11.) Brown has responded in opposition. (Doc. 16.) For the reasons set forth below, the motion will be granted and the amended complaint will be dismissed.

## I.    BACKGROUND

The facts alleged in the current complaint, taken in the light most favorable to Brown, show the following:

Brown — a black woman — has been employed by UNC Health since January 2008. (Doc. 9 ¶ 6.) Her current position is Patients Account Manager for the Financial Counseling Team. (Id. ¶ 7.) Throughout her employment with UNC Health, Brown has consistently exceeded performance expectations and has regularly accepted

responsibilities additional to those of her primary role, generally without commensurate compensation. (Id. ¶¶ 8, 15–16.) Brown alleges that, since 2014, UNC Health has subjected her to multiple forms of discriminatory conduct. (See id. ¶¶ 9–64.)

In September 2014, Brown learned that her salary was significantly lower than that of others in her same job class. (Id. ¶¶ 9–10.) At the time, Brown was the only black female in that class. (Id. ¶ 11.) Ten months later, after her supervisors advocated on her behalf, Brown received a pay increase to remedy the deficiency, but the increase was retroactive only to January 2015, unlike Caucasian co-workers in the same job class who received their increases in 2013. (Id. ¶¶ 12–13.)

Between 2016 and 2018, Brown applied for, but did not receive, multiple promotions. In March 2016, she applied for the positions of Executive Director, Patient Access and Executive Director, Pre-Services. (Id. ¶¶ 21–25.) While she was interviewed for both jobs, she did not receive either, and the Executive Director, Patient Access position was ultimately given to a less-qualified white applicant. (Id. ¶¶ 22–27, 36.) Then, in September 2016, she applied for the position of Director, Patient Access-Revenue Cycle Management. (Id. ¶ 32.) She did not receive an interview for that position, and her application disappeared from the online application portal. (Id. ¶ 33.) In March 2017, Brown again applied for the Executive Director, Patient Access position, but

2

was never interviewed.  (Id. ¶ 36.)  And in April 2018, she applied for the job of Director, Patient Access Medicaid but, again, was not interviewed.  (Id. ¶¶ 44–45.)

Between 2017 and 2018, Brown was promised multiple promotions which never came to fruition.  First, in January 2017, Vice President MaryAnn Minsley told Brown that she would be promoted to Director of Financial Counseling.  (Id. ¶ 34.)  Before the promotion was finalized, however, Brown's team transitioned to a new reporting structure.[1]  (See id. ¶ 35.)  Then, in June 2017, Vice President Steven Rinaldi told Brown that she would be promoted to a Director position by the end of the summer.  (Id. ¶ 37.)  However, Brown heard nothing and by October Rinaldi failed to respond to emails about it.  (Id. ¶ 38.)  In March 2018, Brown's Executive Director, Danielle Reese, who is black, informed her that she wanted her to serve as the Interim Director for Medicaid and Financial Assistance.  (Id. ¶ 40.)  Within a few days, though, Reese rescinded the opportunity because it was "too political." (Id. ¶ 42.)  Later, Reese offered Brown a promotion to Director of Financial Counseling, and in August 2018 Reese provided her with the expected salary for the position.  (Id. ¶¶ 46–48.)  Brown indicated, based on the salaries of other UNC Health Director-level positions, that she believed the salary was too low.  (Id.

---

[1] There is no allegation that the position was filled at the time.

3

¶ 49.)  She ultimately did not receive the position and later learned that she was considered to have rejected the offer.  (See Doc. 16-3 at 4.)

On September 12, 2018, Reese hired her personal friend, Yolanda Banks, who is black, as a Manager for Financial Counseling. (Id. ¶¶ 50, 53, 55.)  Brown filed a formal internal complaint regarding the hiring decision, claiming that Banks, who was significantly less experienced than Brown, received the position due to her friendship with Reese.  (Id. ¶¶ 53–58.)  When Reese learned of the formal complaint, she began treating Brown differently.  (Id. ¶ 59.)  Reese "became very short" with Brown, cut off daily communications with her, regularly changed locations for meetings with her at the last minute, and listed other UNC Health Directors with less experience than her as initial points of contact in her absence.  (Id. ¶¶ 60–62.)  Brown understood Reese to be retaliating against her for having filed her internal complaint.  (Id. ¶ 59.)

In March 2019, Brown submitted an initial inquiry form to the Equal Employment Opportunity Commission ("EEOC").  (Doc. 16-2.) Based on her submission, the EEOC drafted a charge of discrimination.  (Doc. 16-1; Doc. 16 at 11.)  The charge alleged that on November 30, 2018, Brown applied for the position of Director for Financial Counseling and on February 19, 2019, she learned that a less-qualified white applicant, Jennifer Headen,

4

was selected.  (Doc. 16-1.)  On April 26, 2019, Brown digitally signed the charge, and on August 15, 2019, the EEOC issued her a Right to Sue letter which advised her of her right to bring suit on her claim within 90 days.  (Id.; Doc. 9 ¶ 66.)

On November 12, 2019, Brown filed an application and order extending the time to file a complaint in North Carolina Superior Court in Orange County, North Carolina, and on December 3, 2019, filed suit in that court.  (Doc. 1-1; Doc. 3.)  UNC Health timely removed the action to this court (Doc. 1), and Brown filed an amended complaint (Doc. 9).  Brown brings two claims against UNC Health for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e (2020) ("Title VII"):  she claims, first, that UNC Health subjected her to discrimination on the basis of her race; and second, that it retaliated against her for engaging in protected activities.[2]  (Id. ¶¶ 67–79.)  UNC Health now moves to dismiss both claims.  (Doc. 11.)  The motion is fully briefed and ready for decision.  (See Docs. 12, 16, 18.)

## II. ANALYSIS

### A. Eleventh Amendment Immunity

UNC Health first seeks dismissal of Brown's claims on the basis of Eleventh Amendment immunity pursuant to Federal Rules of

---

[2] Although Brown's amended complaint does not indicate whether her retaliation claim arises under Title VII or state law, her opposition to the present motion clarifies that her retaliation claim is brought only under Title VII.  (Doc. 16 at 16.)

5

Civil Procedure 12(b)(1) and (b)(2). (Doc. 12 at 30—32.)

"The Fourth Circuit has not conclusively established whether a dismissal based on Eleventh Amendment immunity is a dismissal for lack of subject matter jurisdiction under Rule 12(b)(1) or for failure to state a claim under Rule 12(b)(6)." Mary's House, Inc. v. North Carolina, 976 F. Supp. 2d 691, 696–97 (M.D.N.C. 2013) (citing Andrews v. Daw, 201 F.3d 521, 524-25 n.2 (4th Cir. 2000)). This court, like others in the Fourth Circuit, has considered Eleventh Amendment immunity under Rule 12(b)(1) and will do so here. See Blackburn v. Trs. of Guilford Tech. Cmty. Coll., 822 F. Supp. 2d 539, 542 n.2 (M.D.N.C. 2011) (collecting cases); McCants v. Nat'l Collegiate Athletic Ass'n, 251 F. Supp. 3d 952, 954-55 (M.D.N.C. 2017) (same).

A motion to dismiss pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction raises the question of "whether [the plaintiff] has a right to be in the district court at all and whether the court has the power to hear and dispose of [the] claim." McCants, 251 F. Supp. 3d at 955 (alterations in original) (quoting Holloway v. Pagan River Dockside Seafood, Inc., 669 F.3d 448, 452 (4th Cir. 2012)). While a plaintiff bears the burden of proving the court's subject matter jurisdiction, a defendant who raises the defense of Eleventh Amendment immunity bears the burden of demonstrating that it is entitled to that immunity. Hutto v. S.C. Ret. Sys., 773 F.3d 536, 543 (4th Cir. 2014).

6

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State." U.S. Const. amend. XI. This prohibits a private citizen from suing a state in federal court for money damages. Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984); Ballenger v. Owens, 352 F.3d 842, 844 (4th Cir. 2003). This prohibition extends to suits against any state agency that is considered an arm of the state. See Blackburn, 822 F. Supp. 2d at 542–43 (citing Regents of Univ. of Cal. v. Doe, 519 U.S. 425, 429-30 (1997)). State-funded colleges and universities structured to have close ties to the state are considered "arms of the State" for Eleventh Amendment purposes. Id. (citations and alterations omitted); see also Diede v. UNC Healthcare, No. 5:16-CV-00788-BR, 2018 WL 549430, at *3 (E.D.N.C. Jan. 24, 2018) (extending immunity granted to public universities to UNC Health). However, there are exceptions. For example, Congress may abrogate a state's Eleventh Amendment immunity through the enactment of legislation pursuant to Section 5 of the Fourteenth Amendment, as it did in enacting Title VII. See Fitzpatrick v. Bitzer, 427 U.S. 445 (1976); see also Savage v. Maryland, 896 F.3d 260, 275 (4th Cir. 2018) (explaining Title VII abrogates Eleventh Amendment immunity for suits against a state agency in its capacity as an employer).

7

Although UNC Health acknowledges that Congress has abrogated Eleventh Amendment immunity in relation to Title VII claims, it contends that Brown is required to affirmatively plead that sovereign immunity has been abrogated in order for the court to exercise jurisdiction.[3] (Doc. 12 at 31-32.) This argument is not supported by the Federal Rules of Civil Procedure. Rule 8(a)(1) requires a complaint to contain "a short and plain statement of the grounds for the court's jurisdiction . . . ." Fed. R. Civ. P. 8(a)(1). Rule 8(e) counsels that "[p]leadings must be construed so as to do justice." Fed. R. Civ. P. 8(e). Under these rules, Brown is not obligated to explicitly state that Title VII abrogates Eleventh Amendment immunity for this court to exercise jurisdiction.[4] See Pinkley, Inc. v. City of Frederick, MD, 191 F.3d 394, 399 (4th Cir. 1999) ("[A] federal court may find that it has jurisdiction if the facts supporting jurisdiction have been clearly pleaded.").

In her amended complaint, Brown states that jurisdiction is

_____

[3] Brown has failed to respond to this argument, yet the Fourth Circuit requires substantive review of even unopposed motions to dismiss. See Stevenson v. City of Seat Pleasant, Md., 743 F.3d 411, 416 n.3 (4th Cir. 2014) ("Even though [the plaintiffs] did not challenge the motions to dismiss, we note that the district court nevertheless has an obligation to review the motions to ensure that dismissal is proper.").

[4] UNC Health, relying on North Carolina law, argues that Brown is required to "allege and prove" a waiver of sovereign immunity. (See Doc. 12 at 30 (citing Efird v. Riley, 342 F. Supp. 2d 413, 425 (M.D.N.C. 2004) (addressing waiver of sovereign immunity in the context of state law tort claims)).) As Brown's claims are based on federal law, state law is inapposite here.

8

appropriate pursuant to 28 U.S.C. § 1331. (Doc. 9 ¶ 3.) She further identifies and cites to Title VII as the statute upon which her claims are based. (See id. at 1.) These indications are sufficient to establish this court's subject matter jurisdiction over her claims. As Brown's claims are based in Title VII and UNC Health acknowledges that it is not entitled to Eleventh Amendment immunity for those claims (Doc. 12 at 32), the court declines to dismiss them on UNC Health's technical argument regarding the form of her pleadings. See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era."); see also Trusted Integration, Inc. v. United States, 679 F. Supp. 2d 70, 78–79 (D.D.C. 2010) (declining to dismiss complaint that did not state a waiver of sovereign immunity because "plaintiff . . . explicitly cited the Lanham Act . . . which waives sovereign immunity"). Because Brown bases her claims on Title VII, UNC Health is not entitled to sovereign immunity and the court may exercise subject matter jurisdiction over these claims.

### B. Failure to State a Claim

#### 1. Legal Standard

Federal Rule of Civil Procedure 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. (8)(a)(2). Under Federal Rule of Civil Procedure 12(b)(6), "a

9

complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. In considering a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint," Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam), and all reasonable inferences must be drawn in the plaintiff's favor. Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997). "Rule 12(b)(6) protects against meritless litigation by requiring sufficient factual allegation 'to raise a right to relief above the speculative level' so as to 'nudge[] the[] claims across the line from conceivable to plausible.'" Sauers v. Winston-Salem/Forsyth Cnty. Bd. Of Educ., 179 F. Supp. 3d. 544, 550 (M.D.N.C. 2016) (alteration in original) (quoting Twombly, 550 U.S. at 555). Although an employment discrimination plaintiff need not plead a *prima facie* case of discrimination to survive a motion to dismiss, McCleary-Evans v. Md. Dep't of Transp., State Highway Admin., 780 F.3d 582, 584 (4th Cir. 2015) (citing Swierkiewicz v. Sorema N. A., 534 U.S. 506, 515 (2002)), "the complaint must 'state[] a plausible claim for relief' that permit[s] the court to infer more than the mere possibility of

10

misconduct based upon 'its judicial experience and common sense.'"
Coleman v. Md. Ct. App., 626 F.3d 187, 190 (4th Cir. 2010)
(alterations in original) (quoting Iqbal, 556 U.S. at 679). Thus,
mere legal conclusions are not accepted as true, and "[t]hreadbare
recitals of the elements of a cause of action, supported by mere
conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.
In reviewing a Rule 12(b)(6) motion, the court may "consider
documents attached to the complaint, see Fed. R. Civ. P. 10(c), as
well as those attached to the motion to dismiss, so long as they
are integral to the complaint and authentic." Philips v. Pitt
Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

### 2. Violations of Title VII

Brown brings two claims under Title VII: (1) discrimination
based on race, in the form of both disparate treatment and a
racially hostile work environment, and (2) retaliation based on
participation in a protected activity. (Doc. 9 ¶¶ 68-79.) UNC
Health contends that both claims should be dismissed because (1)
Brown's claims are time-barred, (2) Brown has failed to exhaust
her causes of action as required by Title VII, and (3) Brown has
failed to state a claim for relief. (Doc. 12 at 15, 20-21, 24,
27-28.) Each argument is addressed in turn.

### a. Timeliness of claims

UNC Health first argues that a significant portion of Brown's
allegations are time-barred. (See Doc. 12 at 20-21.) Brown

contends that the allegations are not time-barred because, she argues, the continuing violation doctrine applies to extend the limitations period. (Doc. 16 at 13–14.) UNC Health responds that the continuing violation doctrine is inapplicable here. (Doc. 18 at 13–15.)

To maintain an action under Title VII, a plaintiff must file an administrative charge with the EEOC within 180 days of the alleged misconduct, or the claims are time-barred. 42 U.S.C. § 2000e-5(e)(1); see Williams v. Giant Food Inc., 370 F.3d 423, 428 (4th Cir. 2004). "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002). However, under the continuing violation doctrine, a court may consider "incidents that occurred outside the time bar when those incidents are part of a single, ongoing pattern of discrimination." Holland v. Wash. Homes, Inc., 487 F.3d 208, 219 (4th Cir. 2007). The doctrine is based on the idea that some discriminatory employment practices — namely hostile environment claims — are "composed of a series of separate acts that collectively constitute one unlawful employment practice." Morgan, 536 U.S. at 116–17 (internal quotation marks omitted). While the Supreme Court has refrained from ruling on whether the continuing violation doctrine applies in pattern or practice cases, id. at 115 n.9, many courts have held that the

12

doctrine does not apply to "discrete acts of discrimination merely because the plaintiff asserts that such discrete acts occurred as part of a policy of discrimination," Williams, 370 F.3d at 429. The Fourth Circuit has held that discriminatory failure to promote claims, even if "part of a broader pattern or practice of discrimination, . . . remain discrete acts of discrimination." Id. Similarly, discriminatory pay claims have been found to be discrete acts, even when made pursuant to a broader policy of discrimination. See id. (discussing Bazemore v. Friday, 478 U.S. 385 (1986) and stating that "each discriminatory salary payment was a discrete discriminatory act"); see also Brinkley-Obu v. Hughes Training, Inc., 36 F.3d 336, 346 (4th Cir. 1994) ("[T]he issuance of each diminished paycheck constitutes a discriminatory act.").

Here, because Brown filed her charge with the EEOC on April 26, 2019, the alleged misconduct must either have occurred on or after October 28, 2018, or be considered part of a continuing violation, to be timely.[5] (See Doc. 16-1.) However, the majority

---

[5] Although not argued by either party, the Supreme Court has recognized that preliminary documents filed with the EEOC may, in certain circumstances, be considered a charge for the purposes of the 180-day filing period. See Fed. Express Corp. v. Holowecki, 552 U.S. 389 (2008). As Brown filed an initial inquiry with the EEOC on March 31, 2019 (see Doc. 9 ¶ 64; Doc. 16-2), if this were considered a charge under the standards articulated in Holowecki, conduct alleged as occurring on or after October 2, 2018, could be considered timely. However, because the issue is not addressed by either party and it is not outcome-determinative, the court does not consider it here.

of the conduct alleged fits neither requirement and is therefore time-barred.

First, the amended complaint alleges discriminatory conduct that occurred primarily before October 28, 2018. Brown alleges facts regarding a disparate pay claim in 2014 which was remedied in 2015, multiple failure to promote claims from 2016 to August 2018, and a claim of unfair hiring practices stemming from the September 12, 2018 hiring of Banks.[6] None of these acts occurred after October 28, 2018, and therefore were untimely when Brown filed her EEOC charge on April 26, 2019.

Second, none of her time-barred allegations falls within the continuing violation doctrine. Brown's discriminatory pay claim, failure to promote claims, and single instance of unfair hiring practices each constitute a discrete employment action, despite Brown's characterization of the acts as part of a broader pattern of discrimination. As such, the continuing violation doctrine is

---

[6] Brown alleges that her internal complaint regarding the hiring of Banks forms, in part, the basis for her retaliation claim. (See Doc. 9 ¶ 75.) However, she does not allege, nor could she, that this incident is the basis of her discrimination claim. Like Brown, Banks is black and there are no facts indicating that the decision to hire Banks was related to race. (Id. ¶ 50.) Rather, Brown contends that the hiring of Banks was unfair because Banks received the position due to her friendship with Reese. (Id. ¶¶ 53–57.) While the unfair hiring decision itself is a discrete employment action that occurred more than 180 days before the charge (or even Brown's initial inquiry with the EEOC), the retaliation that Brown experienced in the wake that decision plausibly extended into the period after that. As such, the retaliation claim brought on that basis may be considered timely and is considered as such, infra.

Case 1:20-cv-00086-TDS-JLW   Document 19   Filed 02/11/21   Page 14 of 26

inapplicable. Brown's allegations regarding conduct occurring before October 28, 2018, are time-barred.

Because Brown's disparate treatment and hostile work environment claims are all based on conduct occurring before October 28, 2018, that is time-barred, the court does not consider the merits of these claims.[7] This leaves only Brown's retaliation claim for further consideration.[8]

### b. Exhaustion of Title VII retaliation claims

In relation to Brown's remaining timely claim of retaliation, UNC Health argues that dismissal should be granted because Brown failed to exhaust her claim through the filing of an appropriate administrative charge with the EEOC. (Doc. 12 at 27.) In response, Brown argues that her claims are exhausted because she filed an administrative charge with the EEOC and the retaliation

---

[7] Even if timely, however, these claims would be dismissed based on lack of exhaustion. In Title VII suits, "factual allegations made in formal litigation must correspond to those set forth in the administrative charge." Chacko v. Patuxent Inst., 429 F.3d 505, 509 (4th Cir. 2005). As discussed infra, Brown's EEOC charge details a discrete failure to promote claim from February 2019. None of the allegations in Brown's amended complaint that underlie her disparate treatment and racially hostile work environment claims appears in her EEOC charge, nor is any reasonably related to that charge. As such, these claims would be considered unexhausted and subject to dismissal on that basis as well.

[8] Although Brown's EEOC charge details a discriminatory failure to promote claim that occurred in February 2019, Brown has not re-alleged that incident as a basis for the present suit. Without bringing a claim based on that conduct, the court cannot consider the merits of a possible discrimination claim arising from that conduct. However, as Brown indicates that she was subjected to retaliation based upon the filing of the charge, the court considers the charge in relation to her retaliation claim, infra.

15

alleged in the amended complaint naturally arises from the allegations made in the EEOC charge. (Doc. 16 at 11-12.) She further argues that the claims not explicitly mentioned in her EEOC charge may be considered exhausted because she mentioned the claims in her initial inquiry with the EEOC. (Id. at 11.)

### i. Allegations arising from the charge

To bring suit under Title VII, a claimant must first exhaust her administrative remedies by filing an appropriate charge with the EEOC. See Sloop v. Mem'l Mission Hosp., Inc., 198 F.3d 147, 148 (4th Cir. 1999). "The allegations contained in the administrative charge . . . generally operate to limit the scope of any subsequent judicial complaint," Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 962-63 (4th Cir. 1996), in that "factual allegations made in formal litigation must correspond to those set forth in the administrative charge," Chacko v. Patuxent Inst., 429 F.3d 505, 509 (4th Cir. 2005). A plaintiff cannot raise claims under Title VII that "exceed the scope of the EEOC charge and any charges that would naturally have arisen from an investigation thereof." Dennis v. Cnty. of Fairfax, 55 F.3d 151, 156 (4th Cir. 1995); see also Evans, 80 F.3d at 963 ("Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit.").

16

Although courts construe administrative charges liberally, "[i]f the factual foundation in the administrative charge is too vague to support a claim that is later presented in subsequent litigation, that claim will [] be procedurally barred." Chacko, 429 F.3d at 509 (citing Taylor v. Va. Union Univ., 193 F.3d 219, 239 (4th Cir. 1999) (en banc)). A charge must be "sufficiently precise to identify the parties, and to describe generally the action or practices complained of." Keener v. Universal Cos., 128 F. Supp. 3d 902, 912 (M.D.N.C. 2015) (quoting Chacko, 429 F.3d at 508). Further, a plaintiff cannot bring suit on a claim under Title VII where the "charge[] reference[s] different time frames, actors, and discriminatory conduct than the central factual allegations in h[er] formal suit," id. (alterations in original) (quoting Chacko, 429 F.3d at 506), or the charge "alleges one type of discrimination — such as discriminatory failure to promote — and the claim encompasses another type — such as discrimination in pay and benefits," Chacko, 429 F.3d at 509. Similarly, an administrative charge that alleges a discrete discriminatory act is considered insufficient to support suit where the plaintiff subsequently alleges a broader pattern of misconduct. Id. (citing Dennis, 55 F.3d at 153, 156-57).

Typically, a claim for retaliation that is based upon the filing of an EEOC charge is not subject to the same exhaustion requirements as other Title VII claims. See Crosten v. Kamauf,

17

932 F. Supp. 676, 683 (D. Md. 1996); <u>Johnson v. Portfolio Recovery</u> <u>Assocs., LLC</u>, 682 F. Supp. 2d 560, 573 (E.D. Va. 2009); <u>Chapman v.</u> <u>Duke Energy Carolinas, LLC</u>, No. CIV. 309CV37RJCDCK, 2010 WL 411141, at *5 (W.D.N.C. Jan. 28, 2010). A plaintiff may generally raise a retaliation claim based on the filing of a timely EEOC charge for the first time in federal court, as long as the claim both is "related to" and "gr[ew] out" of the EEOC charge. <u>Brown v. Runyon</u>, 139 F.3d 888 (4th Cir. 1998) (citing <u>Nealon v. Stone</u>, 958 F.2d 584 (4th Cir. 1992)); <u>see also</u> <u>Jones v. Calvert Grp., Ltd.</u>, 551 F.3d 297, 302 (4th Cir. 2009). However, "[i]f either predicate . . . is lacking, the rule cannot operate to overcome a plaintiff's failure to have exhausted administrative remedies." <u>Runyon</u>, 139 F.3d at *3. As such, where alleged retaliation could have been raised in an initial EEOC charge because the retaliation occurred prior to the filing of the charge, the claim will be held to the exhaustion requirements applicable to other Title VII claims. <u>Crosten</u>, 932 F. Supp. at 683; <u>Smith v. Potter</u>, No. 1:09CV587, 2010 WL 5288183, at *10 (M.D.N.C. Dec. 17, 2010).

Here, Brown's EEOC charge states:

I have been employed by [UNC Health] since 2008, my current job title is Patient Accounts Manager.

On or about Nov 30 2018 I applied for and received an interview for Health System Director for Financial Counseling. I was informed on or about February 19 2019 that a lesser qualified white female Jennifer Headen had been hired in the position.

18

> I believe I have been discriminated against due to my
> race back [sic] and that UNC discriminates against race
> black as a class in hiring senior level managers in
> violation of Title VII . . . .

(Doc. 16-1.)  On the charge form, Brown checked the box indicating
discrimination based on race, but she did not check the box
connoting retaliation.  (Id.)

Based on the facts alleged in the charge, while the charge
supports a discrete discriminatory failure to promote claim, there
is no indication that Brown intended to allege retaliation in that
charge.  Further, the facts alleged within the charge are not
reasonably related to those brought in her current retaliation
claim because the charge details different time frames, actors,
and conduct.  Therefore, Brown's retaliation claim was not
exhausted by the filing of this charge.  However, lack of
exhaustion does not bar the court's consideration of a retaliation
claim where the alleged retaliation was based on the filing of the
EEOC charge.  And here, Brown seems to allege that the retaliation
she experienced was — at least in part — based on the filing of
her EEOC charge.  (See Doc. 9 ¶ 75 ("[Brown] engaged in legally
protected activity by filing a formal complaint/grievance about
the circumstances surround[ing] her denial of promotion . . . .").
As such, to the extent Brown alleges retaliation based on her
filing of the EEOC charge, her claim is not barred due to lack of
exhaustion.

19

Brown also claims that she experienced retaliation, in part, due to the internal complaint she filed regarding the hiring of Banks. (Id. ("[Brown] engaged in legally protected activity by filing a formal complaint/grievance about the circumstances surround[ing] . . . the promotion of lesser qualified Banks."); see also id. ¶ 59 ("Reese, upon learning of [Brown]'s filing a formal complaint about Banks . . . commenced a retaliation campaign against [Brown].") To the extent that her retaliation claim is based on that activity, the claim is not exhausted. According to the amended complaint, Brown filed the formal complaint regarding the promotion of Banks in September 2018 and began experiencing retaliatory conduct shortly thereafter. (Id. ¶¶ 58-62.) As this retaliatory conduct preceded the filing of her EEOC charge, it neither is related to nor grew out of the EEOC charge. Therefore, this claim should have been brought in her EEOC charge and is barred due to lack of exhaustion.

### ii. Initial inquiry

To the extent her retaliation claim is not exhausted by the EEOC charge, Brown argues that the claim should be considered exhausted based on the initial inquiry that she filed with the EEOC. (Doc. 16 at 10-11.) UNC Health responds that Brown's ability to seek relief under Title VII is limited to the information included in her EEOC charge. (Doc. 18 at 8.)

"[C]ourts do not look to allegations included in intake

20

questionnaires to determine the scope of the charges filed before the EEOC." Brown v. Target, Inc., No. CIV.A. ELH-14-00950, 2015 WL 2452617, at *6 (D. Md. May 20, 2015) (citing Green v. JP Morgan Chase Bank Nat. Ass'n, 501 F. App'x 727, 731-32 (10th Cir. 2012) and Ahuja v. Detica Inc., 873 F. Supp. 2d 221, 227-31 (D.D.C. 2012));[9] Rios v. City of Raleigh, No. 5:19-CV-00532-M, 2020 WL 5603923, at *6-7 (E.D.N.C. Sept. 18, 2020) (collecting cases). Rather, as the Fourth Circuit has explained, "[i]n any . . . lawsuit alleging unlawful employment practices," courts "may only consider those allegations included in the EEOC charge" itself. Balas v. Huntington Ingalls Indus., Inc., 711 F.3d 401, 407 (4th Cir. 2013). As "one of the purposes of requiring a party to file charges with the EEOC is to put the charged party on notice of the claims raised against it," initial inquiries submitted to the EEOC "cannot be read as part of [a plaintiff's] formal discrimination charge without contravening the purposes of Title VII." Id. at 408; see also Pruitt v. Peninsula Reg'l Med. Ctr., GLR-14-00344, 2014 WL 2916863, at *6-7 (D. Md. June 25, 2014) (dismissing claims included in an intake questionnaire but not included in the EEOC

---

[9] Although the court in Target discussed the impact of EEOC intake questionnaires on the scope of exhaustion, later courts have applied the same standards in the context of EEOC initial inquiry forms, a newer administrative process. See, e.g., Muldrow v. S.C. Dep't of Corr., No. CV 2:19-3498-DCN-KDW, 2020 WL 4588893, at *6 (D.S.C. Apr. 7, 2020), report and recommendation adopted, No. 219CV03498DCNKDW, 2020 WL 2569849 (D.S.C. May 21, 2020); Martinez v. Prairie Fire Dev. Grp., LLC, No. 19-CV-2143-JWL, 2019 WL 3412264, at *5 (D. Kan. July 29, 2019).

charge for failure to administratively exhaust); Gully v. District of Columbia, 474 F. Supp. 3d 154, 165–66 (D.D.C. 2020) (concluding plaintiff did not exhaust certain claims because "[h]e filed no administrative charge; he filed an inquiry").

Brown asks the court to consider the allegations within her initial inquiry form to expand the scope of claims considered exhausted by her EEOC charge. Under the Fourth Circuit's holding in Balas, however, the court considers only those allegations brought within the charge itself. Here, although the initial inquiry included details regarding the hiring of Banks, the charge itself did not. (See Docs. 16-1, 16-2.) Brown argues that she is "burdened with . . . a legal dilemma not of her making" as the EEOC determined what claims to set out in the charge and, in that process, did not include information she set out in the EEOC's initial inquiry form where she listed the reason for the complaint as "Race, Color, Retaliation." (Doc. 16 at 10; Doc. 16-2 at 1.) While one can appreciate that the EEOC composed the charge on behalf of Brown and that the charge was based upon her initial inquiry, Brown was not required to sign a charge that did not fairly represent her claims. As the court's review is limited to claims properly brought within the EEOC charge, the court will not consider the claims alleged in the initial inquiry to expand the scope of the charge. Brown's retaliation claim stemming from her internal complaint regarding the hiring of Banks therefore remains

22

unexhausted.[10]

### c. Sufficiency of retaliation claim

UNC Health argues that even if Brown's retaliation claim were properly before the court, it would nevertheless fail to sufficiently state a claim under Title VII. (Doc. 12 at 28.) Brown has not responded to this argument.[11] As the court has found that Brown may pursue her retaliation claim in this case arising from the filing of her EEOC charge, the court next considers whether she has successfully stated a claim on that basis.

Title VII makes it an "unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation,

---

[10] Even if the court were to consider that claim exhausted, however, the claim would still not survive dismissal. The alleged retaliation would not be actionable under Title VII because Brown's internal complaint regarding the promotion of Banks would not qualify as protected activity under Title VII. Title VII prohibits retaliation against employees who oppose unlawful employment practices as defined under the act. See 42 U.S.C. § 2000e-3. By virtue of her internal complaint, Brown indicated that she opposed the hiring of Banks because she received the position due to her personal friendship with Reese. However, nepotism is not an unlawful employment practice under Title VII, and therefore action opposing it is not protected by Title VII. See Jackson-Brown v. Tech. & Project Eng'g Servs., LLC, No. 1:14-CV-01297-GBL, 2014 WL 7272887, at *5 (E.D. Va. Dec. 17, 2014) (citing Ayers v. AT&T Co., 826 F. Supp. 443, 445 (S.D. Fla. 1993)).

[11] As discussed in note 3, supra, although Brown has failed to respond to this argument, substantive review is required to determine whether dismissal on these grounds is appropriate. See Stevenson, 743 F.3d at 416 n.3.

23

proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). Generally speaking, to state a claim for retaliation under Title VII, a plaintiff must show (1) she engaged in protected activity,[12] (2) the employer took an adverse action against her, and (3) a causal connection existed between the protected activity and the adverse action. Carter v. Ball, 33 F.3d 450, 460 (4th Cir. 1994); Ross v. Commc'ns Satellite Corp., 759 F.2d 355, 365 (4th Cir. 1985); Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 258 (4th Cir. 1998); Causey v. Balog, 162 F.3d 795, 803 (4th Cir. 1998). In the context of retaliation, "adverse action" encompasses actions "that a reasonable employee would have found . . . materially adverse, which . . . means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) (internal quotation marks omitted). Whether an action is materially adverse is context-specific. Id. at 69. An employer's action that "may make little difference to many workers, but may matter enormously" to a particular plaintiff, may constitute a materially adverse action. Id. However, trivial harms, petty slights, or minor annoyances do not suffice. Id. at 69; see also Laird v. Fairfax Cnty., Va., 978 F.3d 887, 893 (4th

---

[12] Title VII protects opposition directed not only toward unlawful employment practices, but also those practices that a plaintiff reasonably believes to be unlawful. DeMasters v. Carilion Clinic, 796 F.3d 409, 417 (4th Cir. 2015).

Cir. 2020) ("[T]he harm must be a *significant detriment*, not relatively insubstantial or trivial." (emphasis in original) (internal quotation marks omitted)).

Brown has successfully alleged the first element of a retaliation claim — participation in a protected activity — in that she filed a charge of discrimination with the EEOC. Jefferies v. UNC Reg'l Physicians Pediatrics, 392 F. Supp. 3d 620, 629 (M.D.N.C. 2019). However, it is less clear that she has pleaded the second required element, an adverse action. Brown alleges that Reese "became short" with her, cut off daily communications with her, changed the location of meetings, and listed other employees as initial points of contact instead of her. (Doc. 9 ¶¶ 60-62.) As these actions do not appear to reflect a significant detriment, it is doubtful that they constitute "materially adverse" actions to support a retaliation claim. Regardless, the court need not decide the issue because Brown's claim fails on the third required element, causation.

To allege causation in the context of a retaliation claim, Brown must show (1) that the protected activity preceded the materially adverse action and (2) that the employer knew the employee engaged in a protected activity. Jefferies, 392 F. Supp. 3d at 629; see Causey, 162 F.3d at 803-04 (stating that "[k]nowledge of a charge is essential to a retaliation claim"); see also Dowe v. Total Action Against Poverty in Roanoke Valley, 145

25

F.3d 653, 657 (4th Cir. 1998).  Here, each of the adverse actions alleged by Brown occurred prior to the filing of her EEOC charge, and Brown has alleged no additional adverse action that occurred after she filed her EEOC charge.  Indeed, the current complaint largely suggests that the actions were taken in retaliation for Brown complaining about the hiring of Banks, not the filing of the EEOC charge.[13]  (See, e.g., Doc. 9 ¶¶ 59-66.)  As Brown has not identified any adverse action to which she was subjected after she filed her EEOC charge, she has not plausibly alleged that she was retaliated against because of that charge.  Therefore, Brown has failed to state a claim for retaliation, and the claim will be dismissed.

**III. CONCLUSION**

For the reasons stated,

IT IS THEREFORE ORDERED that UNC Health's motion to dismiss (Doc. 11) is GRANTED and the amended complaint is DISMISSED WITH PREJUDICE.


                                            /s/   Thomas D. Schroeder
                                    United States District Judge

February 11, 2021

---

[13] And as discussed in note 10, supra, Brown's complaint regarding the hiring of Banks does not constitute a protected activity because she was not opposing an unlawful employment practice, but rather nepotism, which is not covered by Title VII.

Case 1:20-cv-00086-TDS-JLW   Document 19   Filed 02/11/21   Page 26 of 26